UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PILGRIM REST COMMUNITY DEVELOPMENT AGENCY | * * * | CIVIL ACTION |
| versus | * * | NO. 11-3011 |
| PLAQUEMINES PARISH, ET AL. | * | SECTION "L" (4) |

## ORDER & REASONS

Before the Court is a motion filed by Plaintiff Pilgrim Rest Community Development Agency ("Pilgrim Rest") asking this Court to issue a preliminary injunction and temporary restraining order prohibiting the Greater New Orleans Fair Housing Action Center ("GNOFHAC") from "the further pursuit of any judgments or executions of judgments." (Rec. Doc. 117). After having considered the submissions and the applicable law, the Court is ready to rule. Because the Court finds that this motion is procedurally improper, as well as substantively meritless, the motion is denied.

I.     BACKGROUND

This lawsuit originally involved zoning variance requests for construction of housing for persons with disabilities. Pilgrim Rest sued Plaquemines Parish and various other Defendants for unreasonably delaying a reasonable accommodation to build two housing developments. (Rec. Doc. 1 at 2). From the date that this lawsuit was filed on December 8, 2011, until February 5, 2013, GNOFHAC represented Pilgrim Rest. (Rec. Docs. 1, 90). Through the course of the litigation, GNOFHAC actively pursued the relief that Pilgrim Rest sought. GNOFHAC filed a complaint and motion for temporary restraining order and

1

preliminary injunction.  (Rec. Doc. 2).  This Court held an evidentiary hearing on that motion and GNOFHAC presented testimony to the Court in support of its motion.  (Rec. Doc. 15).  After Defendants denied Pilgrim Rest's reasonable accommodation requests, GNOFHAC filed an amended complaint in May of 2012.  (Rec. Doc. 47).  GNOFHAC also took part in extensive discovery.  GNOFHAC filed several motions to compel discovery and took part in discovery conferences in order to gain access to Plaquemines Parish's permit files, which GNOFHAC then sifted through.  (Rec. Docs. 28, 65, 71).  On February 5, 2013, GNOFHAC was replaced by Attorney George M. Gates, IV.[1]  (Rec. Doc. 90).  The parties in this case had been engaging in settlement discussions and prior to being substituted as counsel, GNOFHAC claims that it submitted a settlement offer to Plaquemines Parish.  (Rec. Doc. 95-2 at 3).  The parties continued to engage in settlement discussions, in which GNOFHAC remained somewhat involved, and ultimately reached a settlement on February 27, 2013.  (Rec. Doc. 93).  The settlement agreement was announced on the record in proceedings before Magistrate Judge Roby.  (Rec. Doc. 95-6).

As part of the settlement agreement, Plaquemines Parish and the other Defendants were to pay $125,000 in attorneys' fees to GNOFHAC and $60,053.87 in damages to Pilgrim Rest.  These terms of the settlement are explicitly stated in the transcript of the settlement, which was conducted before Magistrate Judge Roby.  At one point, the representative for GNOFHAC identified himself as such and stated "[w]e agree to the terms of the settlement where we receive $125,000 in . . . fees."  (Rec. Doc. 95-6 at 6).  He then stated that in exchange for that sum,

---

[1]Pilgrim Rest claims that GNOFHAC withdrew from the case without good cause.  For the purpose of this motion, it is not necessary for this Court to determine whether that is accurate.

GNOFHAC would "waive any claim in this regard for any fees against Plaquemines Parish in this matter." (Rec. Doc. 95-6 at 7). Pilgrim Rest's attorney Gates then repeated the terms of the settlement to make sure that all of the parties were in agreement. He stated "[b]ased on settlement talks, we have agreed to $125,000 in attorneys' fees, $60,053.87 in damages." (Rec. Doc. 95-6 at 9). Magistrate Judge Roby then asked Pilgrim Rest's representative, Reverend Singleton, to confirm the terms of the agreement. She stated "Reverend Singleton, you heard what Mr. Gates just read into the record; is that correct?" (Rec. Doc. 95-6 at 9). Reverend Singleton replied "Yes, ma'am. I agree." (Rec. Doc. 95-6 at 9). All of the parties explicitly agreed to the terms of the settlement agreement and did so on the record. The Defendants subsequently wrote a check to Pilgrim Rest for $185,053.87, stating that it was payable to "Pilgrim Rest Community Development Agency and Gateslaw Inc.; and Greater New Orleans Fair Housing Action Center [("GNOFHAC")]." (Rec. Doc. 108-4 at 1). Both parties agree that Pilgrim Rest received that money. At some point, Pilgrim Rest paid GNOFHAC $50,000 but has refused to pay the remaining $75,000 because Pilgrim Rest does not think that GNOFHAC is entitled to that money. (Rec. Docs. 117 at 4, 118 at 1).

On May 9, 2013, GNOFHAC filed a motion to enforce the settlement agreement. (Rec. Doc. 95). GNOFHAC claimed that it was entitled to the remaining $75,000 and asked this Court to order Pilgrim Rest to pay the remaining balance. Pilgrim Rest did not file an opposition to that motion. On June 14, 2013, the Court ordered Pilgrim Rest to appear at a show cause hearing to show cause why the Court should not grant the motion to enforce the settlement agreement. (Rec. Doc. 97). At the show cause haring on July 24, 2013, no one attended for Pilgrim Rest and the Court granted the motion to enforce the settlement agreement. (Rec. Doc.

3

105). Subsequently, the Court issued an order in which it granted the motion to enforce the settlement agreement and provided that Pilgrim Rest would pay GNOFHAC the remaining attorneys' fees by the next day. (Rec. Doc. 106). Pilgrim Rest did not comply with the Court's order and, on July 26, 2013, GNOFHAC filed a motion for contempt. (Rec. Doc. 108). The Court set another hearing at which Pilgrim Rest was to show cause why it should not be held in contempt. Counsel for Pilgrim Rest did not attend the hearing. The Court granted GNOFHAC's motion and ordered Pilgrim Rest to pay an additional $500 for attorneys' fees associated with the filing of the motion for contempt and $100 per day until it paid the remaining balance of the attorneys' fees. (Rec. Doc. 111).

## II.    PRESENT MOTION

Several months later, Pilgrim Rest filed the instant motion for preliminary injunction and for a temporary restraining order.[2] (Rec. Doc. 117). Pilgrim Rest asks the Court to enjoin GNOFHAC from enforcing this Court's previous judgment. Pilgrim Rest essentially argues that such an injunction is appropriate because this Court overlooked a controlling case. (Rec. Doc. 117 at 1). Pilgrim Rest attaches *Alice E. Kyle v. Dan Glickman* to its motion. No. 99-2111, 2001 WL 35996143 (E.D. La. June 29, 2001). Without any analysis of that case, Pilgrim Rest claims that the court in *Kyle* held that attorneys can no longer receive contingency fees once they withdraw from a case. (Rec. Doc. 117 at 1). Pilgrim Rest argues that this case precludes GNOFHAC from collecting its settled-for attorneys' fees in this case and asks the Court to enjoin GNOFHAC from enforcing this Court's previous judgment which enforced the parties' settlement

---

[2]Pilgrim Rest attempted to file various motions from August 2013 to November 2013 but each motion was marked deficient by the clerk due to different failures on the part of Pilgrim Rest's counsel in filing those motions.

agreement.  (Rec. Doc. 106).

As an initial matter, while this motion is entitled a "motion for temporary restraining order/preliminary injunction" it seems to be, in actuality, a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e).  Pilgrim Rest is essentially asking this Court to reconsider its previous judgment in light of certain cases that Pilgrim Rest claims this Court overlooked.  (Rec. Doc. 117 at 1).  Fed. R. Civ. P. 59(e) provides that a party may file a motion to alter or amend a judgment, however such a motion must be filed "no later than 28 days after the entry of the judgment."  The present motion was filed more than 28 days after this Court's judgment.  Accordingly, Pilgrim Rest is barred from bringing a motion under Rule 59(e).

Instead, Pilgrim Rest asks this Court to issue a temporary restraining order and a preliminary injunction enjoining GNOFHAC from enforcing this Court's judgment.  A preliminary injunction is an extraordinary remedy that is issued only when the party does not have an adequate remedy at law.  "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also* 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice and Procedure § 2947 (3d ed.) ("a preliminary injunction is an injunction that is issued to protect plaintiff from irreparable injury and to preserve the court's power to render a meaningful decision after a trial on the merits").  "[T]he purpose of [a preliminary injunction] is not to determine any controverted right, but to prevent a threatened wrong or any further perpetration of injury, or the doing of any act pending the final determination of the action whereby rights may be threatened or endangered, and to maintain things in the condition in which they are in at the time . . . ."  11A

Charles Alan Wright, et al., Federal Practice and Procedure § 2947 (3d ed.) (quoting *Benson Hotel Corporation v. Woods*, 168 F.2d 694 (8th Cir. 1948)).  The term "preliminary" is defined in Black's Law Dictionary as "[c]oming before and . . . leading up to the main part of something."  Black's Law Dictionary (9th ed. 2009).

Consistent with both the meaning of the term as well as the purpose of the device, motions for preliminary injunction are filed at the beginning of a lawsuit before the merits of the case are decided.  Preliminary injunctions allow plaintiffs to maintain the status quo until the merits of their case can be decided.  Here, however, Pilgrim Rest is attempting to use a preliminary injunction to stop GNOFHAC from enforcing a judgment.  Pilgrim Rest's attempt comes after the entire case has been resolved through a settlement agreement that it explicitly agreed to on the record.  A preliminary injunction is not an appropriate procedural mechanism to stop this Court from enforcing that agreement.  Because of this unusual attempt to use a preliminary injunction *after* the case has been resolved, the Court finds that the usual criteria for determining whether a preliminary injunction is warranted are not applicable in this case and cannot be properly evaluated.  *See Plains Cotton Co-op. Ass'n of Lubbock, Texas v. Goodpasture Computer Service, Inc.*, 807 F.2d 1256 (5th Cir. 1987) (explaining that in order to secure a preliminary injunction, the movant has the burden of proving four elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any damage the injunction might cause to the opponent; and (4) that the injunction will not disserve the public interest.").  For these reasons, Pilgrim Rest's motion for a preliminary injunction is denied.

Similarly, Pilgrim Rest's motion for a temporary restraining order is without merit.  A

temporary restraining order is an "emergency procedure and is appropriate only when the applicant is in need of immediate relief." 11A Charles Alan Wright, et al., Federal Practice and Procedure § 2951 (3d ed.). The temporary restraining order "is designed to preserve the status quo until there is an opportunity to hold a hearing on the application for a preliminary injunction . . . ." *Id.* Having already explained why a preliminary injunction is inappropriate here, the Court similarly finds that a temporary restraining order is not warranted.

Not only is the motion procedurally improper, but it is also without merit. Pilgrim Rest argues that this Court overlooked binding authority that compels a finding that GNOFHAC is not entitled to the remaining attorneys' fees. Pilgrim Rest attaches the *Kyle* case to support this argument. In *Kyle*, this court held that a lawyer who had withdrawn from a case without just cause could not then collect a contingency fee. *See Kyle*, 2001 WL 35996143 at *4 ("The court finds that DeSonier's withdrawal was not for just cause, and that he forfeited his right to a fee by abandoning Kyle's case."). The present case is readily distinguishable from *Kyle*. In the present case there was no contingency fee contract and GNOFHAC is not trying to collect a contingency fee. Instead, GNOFHAC is trying to collect attorneys' fees that were explicitly provided for in the settlement agreement and were paid for by the Defendants. As outlined above, this agreement is detailed in the transcript of settlement that took place before Magistrate Judge Roby. (Rec. Doc. 95-6). Reverend Singleton explicitly stated that he agreed to the settlement agreement, by which GNOFHAC would receive $125,000 for attorneys' fees. (Rec. Doc. 95-6 at 6) ("Mr. Gates: Reverend Singleton, do you agree to the terms of the settlement as mentioned? Mr. Singleton: Yes, Sir."). Even assuming, as Pilgrim Rests alleges, that GNOFHAC withdrew from the case without just cause, the parties' subsequent settlement agreement, which explicitly

provided that GNOFHAC would receive $125,000 for attorneys' fees, made the previous withdrawal irrelevant.  If Pilgrim Rest opposed GNOFHAC's collection of attorneys' fees, it should have raised that concern before entering into the settlement agreement.  Pilgrim Rest cannot agree to the terms of the settlement that provides $125,000 to GNOFHAC and then attempt to keep the money that was paid to cover GNOFHAC's attorney fees.  Furthermore, these issues could have, and should have, been raised in response to GNOFHAC's motion to enforce the settlement agreement which was granted in July 2013.

### III.     CONCLUSION

For the foregoing reasons, Pilgrim Rest's motion for preliminary injunction and temporary restraining order is hereby **DENIED**.


New Orleans, Louisiana, this 28th day of April, 2014.


_____
UNITED STATES DISTRICT COURT JUDGE